ARTHUR J. ANDERSON & another, executors, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Norfolk.    April 7, 1942. — June 29, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Tax,* On legacies and successions.

Upon the executor of the will of a partner in an insurance firm acting in accordance with a provision of the will directing him, "if it be to the advantage of . . . [the] estate, to enter into . . . [a] partnership in accordance with . . . [an] agreement" of the partners of his firm and of two other such firms, which agreement in substance provided for a pooling of the net profits of all the firms in the hands of trustees for distribution among the individual subscribers and the executor of any deceased subscriber "if, his will so providing, his executor elects to become a partner," but which gave the executor no right to participate in the management of the combined businesses, the right thus to receive a share of the profits was taxable as passing by the will to the beneficiaries thereunder within G. L. (Ter. Ed.) c. 65, § 1, as amended.

PETITION, filed in the Probate Court for the county of Norfolk on January 30, 1941, and afterwards amended.

The petition was heard by *Reynolds,* J.

*A. S. Allen*, for the petitioners.

*H. E. Magnuson*, Assistant Attorney General, for the respondent.

DOLAN, J. This is a petition in equity filed in the Probate Court under G. L. (Ter. Ed.) c. 65, § 30, in which the petitioners, as they are executors of the will of Robert J. Dunkle, seek to have determined the validity of certain legacy and succession taxes with respect to their rights or interests under an agreement to which the testator was a party. The case comes before us on the appeal of the petitioners from the decree entered by the judge, adjudging "that the interest in the partnership agreement . . . including future payments referred to in said agreement under paragraph #10 passing under the will is subject to a legacy and succession tax under General Laws, Chapter 65, Section 1," and refusing to determine the amount of the tax and to extend the time for its payment.

The evidence is not reported and the judge made no report of the material facts found by him, but the material facts alleged in the petition were admitted by the answer filed by the respondent. They follow: The testator, prior to his death, was a partner in the firm of OBrion, Russell & Co., which was engaged in the insurance business. On February 1, 1937, he and the other members of that partnership, and the partners in the firms of John C. Paige & Company and Field & Cowles, also engaged in the insurance business, entered into an agreement in writing "for the purpose of greater efficiency, economy, and service in the transaction of the insurance business." The terms of the agreement were that each of the firms was to pay over all its net profits to three trustees, and each of the subscribers together with certain other persons named in the agreement was to receive specified proportions of this fund. Each of the three concerns was to carry on its own business free from any control by the group except as provided in paragraph "*Third*" of the agreement as follows: "The existing partnership agreements of John C. Paige & Company, Field & Cowles, and OBrion, Russell & Co., shall not be modified or terminated, and no new partnership agree-

ments for the conduct of the business of insurance by any of the subscribers hereto shall be made without the consent of a majority of the subscribers hereto.  No contracts by any of the subscribers hereto or of the firms of which they are members with insurance companies with regard to the transaction of the business of insurance shall be modified, terminated, or extended, nor shall any new contracts with insurance companies be made by any of the said subscribers or the firms of which they are members without the consent of the Executive Committee.  No leases or other contracts for the use of real estate or property now used by any of the firms in the business of insurance shall be modified, terminated, or extended, nor shall any new leases or contracts of that character be made by any of the said firms or their partners without the consent of the Executive Committee."

Paragraph "*Tenth*" of the agreement, so far as here pertinent, reads as follows: "The subscribers hereto agree with each other that the death of any subscriber shall not operate to prevent the continuance of this agreement as if death had not occurred.  Upon the death of any subscriber on any day except the thirty-first day of January, said subscriber shall not be entitled to any profit for the fiscal year in which he died, nor shall he be chargeable for any loss; but if, his will so providing, his executor elects to become a partner, such executor shall be admitted to the partnership as of the day following the death for a period of six years after the last day of the month in which he died upon his assent in writing to this agreement.  In the event that the executor so elects, and in accordance with the provisions of the fifth and sixth paragraphs of this agreement, such executor shall be entitled to share in the net profits as follows: For the fiscal year in which the death occurred, the trustees shall pay to the executor an amount computed to the last day of the month in which he died, which the deceased, if living, would have been entitled to, plus one-half of the amount which the deceased would have been entitled to receive according to Paragraph 8, Section 1, had he lived from the last day of the month in which he died to the end

of the fiscal year. For the remaining period of the executor's participation in the partnership, such executor shall receive one-half the amount which the deceased would have been entitled to receive according to Paragraph 8, Section 1, had he lived. Upon the death of any subscriber on the thirty-first day of January, if, his will so providing, his executor elects to become a partner, such executor shall receive as his distribution of the partnership profits for a period of six years from the date of death, one half the amount the deceased would have been entitled to receive had he lived. If any executor elects to become a partner, such executor shall have no voice in any way, manner, or kind in the management of the partnership business, but shall be entitled to participate only in the net profits of said business as above provided."

Paragraph "*Eleventh*" of the agreement provides as follows: "If this agreement be terminated or cancelled, and there be any executor who has elected to receive but has not received the full six years' share of profits as herein provided, and if no agreement of similar tenor be entered into, such executor shall be entitled for the balance of the six year period to the same proportion of combined net profits of John C. Paige & Company, Field & Cowles, OBrion, Russell & Co., as shown by an audit for that purpose made by a certified public accountant, which the deceased would have been entitled to receive if this agreement had not been terminated or cancelled."

By a second codicil to his will, dated May 19, 1937, the testator directed his executors "if it be to the advantage of . . . [his] Estate, to enter into said partnership in accordance with the tenth paragraph of said agreement." The testator's will antedated the agreement. The petitioners elected to exercise the option under the agreement on December 16, 1938. On April 3, 1939, the respondent determined the value of the testator's property as shown in the inventory filed in the Probate Court, which he altered on May 3, 1939. The value thus determined was $115,313.62. The tax due thereon was paid. Subsequently, the respondent required the petitioners to file a return of the income

received by them under the agreement involved, and they filed the return under protest. On September 11, 1940, the respondent made an additional determination of value "upon the interest in said agreement of . . . $182,752.10." The sole contention of the petitioners is that the interest of the testator under the agreement is not property, that passes by his will within the meaning of G. L. (Ter. Ed.) c. 65, § 1, as amended. We do not support this contention, being of opinion that the interest of the testator under the agreement was property that passed by his will to be administered in accordance with its terms, and is therefore taxable under G. L. (Ter. Ed.) c. 65, § 1, as amended.

The courts "in determining the existence of a taxable event upon which a transfer or succession tax has been based have not permitted themselves to be restricted by technical refinements of title arising from the form in which the transaction has been cast, but have been more concerned with the practical advantages that accrued to the taxpayer from the devolution of the decedent's property. The shifting of the economic benefits . . . occasioned by the death of the owner . . . [resulting] in the acquisition of the possession or enjoyment of the property by another, has been held sufficient ground for the imposition of the tax." *Welch* v. *Commissioner of Corporations & Taxation,* 309 Mass. 293, 298–299, and cases cited. Substance and not form is to be regarded in the application of tax laws. In the present case the substance of the agreement was that if the petitioners accepted the option to become "partner[s]," the testator's estate was to receive a specified share of the future profits of the three firms, all the members of which participated in the agreement. While in form expressed as an election to become a partner, under the terms of paragraph "*Tenth*" of the agreement the petitioners have "no voice in any way, manner, or kind in the management of the partnership business, but shall be entitled to participate only in the net profits of said business," a right enjoyed by partners in a true partnership. The agreement, in substance, created a trust under which the board of trustees was to receive the net profits of the three firms whose mem-

bers were the subscribers, and pay to the subscribers the proportions specified of the profits received, and with relation to any subscribers who should die, fixed proportions in satisfaction of the interests that they would otherwise have had in the particular actual partnership of which they had been members, and which would have accrued to their estates had they not relinquished those interests for the consideration expressed in the agreement. See *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365.

The tax in question is an excise imposed upon the privilege of the beneficiaries under the residuary clause of the will of the testator to succeed to the property, *Attorney General* v. *Stone*, 209 Mass. 186, and this privilege of receiving and enjoying the property is the commodity that is taxable. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 309 Mass. 37, 43, and cases cited. Obviously in the present case any sums that may have been or will be received by the executors under the agreement will accrue in enjoyment and ultimate possession to the beneficiaries as provided in the will of the testator. That is a succession within the statutory meaning. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 524, affirmed sub nomine *Saltonstall* v. *Saltonstall*, 276 U. S. 260.

The right of the petitioners to receive the share of net profits provided to be paid to the legal representative of the testator is a valuable right, a chose in action, an enforceable claim recognized as such in paragraph "*Twelfth*" of the agreement, which provides that "In case any Trustee, any member of the Executive Committee, or any of the other subscribers hereto, shall personally pay any judgment resulting from the carrying out of this agreement he shall be entitled to reimbursement by the Trustees out of any funds, other than those in the Trust Fund, in their possession or which may thereafter come into their possession." That there may or may not be future profits affects only the determination of the value of the right, a subject properly not argued by the petitioners, since their sole remedy in the first instance, if aggrieved by the determination of

value by the respondent, was by appeal to the Appellate Tax Board under G. L. (Ter. Ed.) c. 65, § 25, as amended, which was taken by the petitioners and is now pending.

The petitioners have relied largely upon the authority of *Bull* v. *United States*, 295 U. S. 247.   In that case the decedent had been a member of a partnership engaged in the business of ship brokers.   The agreement of association provided that, in the event a partner died, the survivors should continue in business for one year subsequent to his death, and that his estate should "receive the same interests, or participate in the losses to the same extent," as the deceased partner would, if living, based on the usual method of ascertaining what the said profits or losses would be, or "the estate of the deceased partner shall have the option of withdrawing his interest from the firm within thirty days after the probate of will . . . and all adjustments of profits or losses shall be made as of the date of such withdrawal." Bull died February 13, 1920.   The representatives of his estate did not exercise the option to withdraw and the business was continued until December 31, 1920, as contemplated by the agreement.   Bull's share of profits to the date of his death was $24,124.20.   Profits accruing to the estate from the date of death were $212,718.79.   The court held that the first sum was properly taxable both as income to Bull and as a part of the corpus of his estate, but that the second sum constituted income of his estate and was improperly taxed as part of the corpus, and reversed the decision of the Court of Claims denying abatement of the estate tax assessed and paid on that sum.

The respondent has argued that, by reason of certain language in that decision, the court must be taken to have limited its decision to one that the error was one arising from double taxation.   While at one point the court did refer to the double taxation involved in the inconsistent action of the "Commissioner" (page 256), we think that the decision is precise to the effect that profits accrued in the lifetime of the decedent could be taxed both as income to him and under the estate tax law, but that profits accruing thereafter were not part of the corpus of the estate of

the decedent, but income of the estate and taxable only as such. See *Degener* v. *Anderson,* 77 Fed. (2d) 859.

Nevertheless, we think that the *Bull* case does not govern the present case. No question of constitutional law entered into the decision in the *Bull* case, which involved only the interpretation of the Federal estate tax law, under which the estate itself is the subject of the tax without reference to the right of enjoyment or possession by those who take by succession through will or intestacy or otherwise. It is not, as distinguished from our own governing law, a tax upon "legacies and successions." G. L. (Ter. Ed.) c. 65. The constitutionality of that statute as appearing in predecessor statutes in substantially the same form was upheld in *Saltonstall* v. *Treasurer & Receiver General,* 256 Mass. 519, affirmed sub nomine *Saltonstall* v. *Saltonstall,* 276 U. S. 260, and we are of opinion that the right to receive the profits under the terms of the agreement in question is properly taxable as property passing by the will of the testator within the meaning of G. L. (Ter. Ed.) c. 65, § 1, as a succession which includes the privileges enjoyed by the beneficiaries under the residuary clause of the testator's will of succeeding to the possession and enjoyment of the property. *Attorney General* v. *Stone,* 209 Mass. 186, 190, and cases cited. *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 269.

*Decree affirmed.*