THE NEW ENGLAND TRUST COMPANY, trustee, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk. October 2, 1939. — March 27, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Taxation,* Succession tax. *Evidence,* Presumptions and burden of proof. *Probate Court,* Determination of succession tax, Inferences, Appeal. *Equity Pleading and Practice,* Inferences, Appeal. *Trust,* Taxes. *Motive. Words,* "In contemplation of . . . death."

After the death of one who in his lifetime had made a transfer of property in trust, the trustee might maintain a petition in the Probate Court under G. L. (Ter. Ed.) c. 65, § 30, to determine whether the transfer was taxable under c. 65.

Upon a petition under G. L. (Ter. Ed.) c. 65, § 30, brought by a trustee to determine whether a transfer of property, made in 1935 by the settlor of the trust to the trustee more than six months but less than two years before the settlor's death, was taxable under c. 65, the commissioner of corporations and taxation had the burden of proving his contention that the transfer had been made in contemplation of the settlor's death and therefore was taxable.

In determining, upon an equity or probate appeal with a report of the evidence, the propriety of an ultimate finding by the trial judge which rests upon inferences from facts admitted or from facts specifically found by the judge or, in the absence of specific findings, from findings

assumed by this court to have been made by the judge in favor of the decree, this court determines what inferences are proper without regard to inferences drawn by the judge. Per Qua, J.

The predominating motive for making a transfer of property must originate "in contemplation of the death" of the transferor in order that the transfer be taxable on that ground under G. L. (Ter. Ed.) c. 65, § 1.

The burden of proving that the proper inference was that an inter vivos transfer in trust of a substantial part of the settlor's property almost two years before his death was made "in contemplation of the death" of the settlor within G. L. (Ter. Ed.) c. 65, § 1, was not sustained by the commissioner of corporations and taxation where, although the settlor was nearly eighty-eight years of age when he made the transfer and a simultaneous will, and the dispositions contained in the trust instrument extended beyond his death, it appeared that he enjoyed extraordinarily good health aside from a few infirmities and had no outward apprehension of approaching death at the time of the transfer, and statements by him and other facts disclosed motives for the transfer associated with his continued living.

PETITION, filed in the Probate Court for the county of Suffolk on August 5, 1938.

The respondent appealed from a decree by *Dillon*, J.

*E. O. Proctor*, Assistant Attorney General, for the respondent.

*E. Field*, (*H. P. Moulton* with him,) for the petitioner.

QUA, J.  This petition is brought under G. L. (Ter. Ed.) c. 65, § 30, by the trustee named in a trust indenture between James B. Hill and the petitioner, executed on May 22, 1935, whereby Hill transferred certain securities to the petitioner in trust to pay the income to Hill's wife during her life and from and after her decease to pay to Hill's son the income and such portions of the principal "as the Trustee may deem necessary in order to secure his comfort, maintenance and support." Upon the decease of the survivor of the wife and son, the principal is to be distributed among the then living issue of the son, and in default of such issue, in equal shares among such of fourteen nieces and nephews of Hill and of his wife as shall then be living. There are spendthrift provisions for the protection of the beneficiaries. Hill died May 21, 1937, just one day less than two years after the execution of the indenture. The object of the petition is to determine whether any succession tax is due with respect to the in-

dentured property under G. L. (Ter. Ed.) c. 65, §§ 1 and 3, as those sections read at the time of the transfer.

Section 1, as it read at the time of the transfer, and in its present amended form, provides in part that property "which shall pass by will, or by laws regulating intestate succession, or by deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth, made in contemplation of the death of the grantor or donor . . . to any person, absolutely or in trust . . . shall be subject to a tax . . .." " Section 3 at the time of the transfer read as follows: "Any deed, grant or gift completed inter vivos, except in cases of bona fide purchase for full consideration in money or money's worth, made not more than six months prior to the death of the grantor or donor, shall, prima facie, be deemed to have been made in contemplation of the death of the grantor or donor. Notwithstanding any provision of section one, no tax shall be payable thereunder on account of any deed, grant or gift in contemplation of death made more than two years prior to the death of the grantor or donor, unless made or intended to take effect in possession or enjoyment after such death." A subsequent amendment by St. 1939, c. 380, has changed the period during which the transfer is prima facie deemed to have been made in contemplation of death from six months prior to the death of the grantor to one year prior thereto. Since the transfer from Hill to the petitioner in trust was made more than six months and less than two years prior to Hill's death, the question is simply one of fact whether Hill made it in contemplation of his own death. The commissioner of corporations and taxation contends that Hill did make the transfer in contemplation of his death, and therefore that it is taxable. The judge of probate found that it was not made in contemplation of death, but was made "for purposes desirable to . . . [Hill] and [*sic*] had he continued to live and not associated with contemplation of his own death," and ruled that no tax was due.

This is not an appeal from a determination of value. See G. L. (Ter. Ed.) c. 65, § 25. Nor is it a petition for abatement under § 27. It is an independent proceeding brought

under § 30 by a trustee to ascertain whether the transfer to it in trust is taxable. It is settled that such a proceeding can be maintained under § 30. *Pratt* v. *Dean*, 246 Mass. 300, at page 307. It is in the nature of a petition by a fiduciary for instructions. Similar cases have been designated as petitions for instructions. *Pratt* v. *Dean, supra,* and cases there cited. *Worcester County National Bank* v. *Commissioner of Corporations & Taxation,* 275 Mass. 216, 217. Whatever may be true in other forms of proceeding, in this proceeding the burden of proof upon issues of fact does not depend upon the circumstance that one party rather than another happens to bring the petition. That burden falls where general principles of law would naturally and logically cause it to fall. The burden of proving the taxability of the transfer is therefore upon the commissioner who seeks to establish the tax. See *Oliver* v. *Colonial Gold Co.* 11 Allen, 283; *Ricker* v. *Brooks,* 155 Mass. 400.

This court has not been called upon hitherto to construe the meaning of the words "made in contemplation of the death of the grantor or donor" and "in contemplation of death" as they appear in G. L. (Ter. Ed.) c. 65, §§ 1 and 3. But the Supreme Court of the United States, speaking through Chief Justice Hughes, in *United States* v. *Wells,* 283 U. S. 102, has exhaustively considered the meaning of the words "in contemplation of death" in connection with the Federal estate tax. See now U. S. C. (1940 ed.) Title 26, § 811 (c). In *United States* v. *Wells* it was held that the dominant purpose in taxing transfers in contemplation of death is "to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax" (pages 116–117); that "the reference is not to the general expectation of death which all entertain" (page 115); that there must be "a particular concern, giving rise to a definite motive" (page 115), which "must be of the sort which leads to testamentary disposition" (page 117); that the test is "always to be found in motive" (page 117); that the existence or nonexistence of a condition of health that naturally gives rise to the feeling that death is near is of great but not necessarily of decisive importance (page 117);

that the determinative motive may be present without consciousness that death is imminent (page 117); that "age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer" (page 118); that the statute does not embrace gifts which spring from purposes associated with life rather than with the distribution of property in anticipation of death (page 118); that illustrative of purposes associated with life are the desire to be relieved of responsibilities, to have children independently established in the lifetime of the donor without particular consideration of his death, the desire to recognize special needs, or to discharge moral obligations (pages 118–119); and that it is necessary carefully to scrutinize the circumstances of each case "to detect the dominant motive of the donor in the light of his bodily and mental condition" (page 119). We accept this decision as indicating the true interpretation of the words of our own statute. For applications of this interpretation see *Becker* v. *St. Louis Union Trust Co.* 296 U. S. 48; *McCaughn* v. *Real Estate Land Title & Trust Co.* 297 U. S. 606; *Colorado National Bank* v. *Commissioner of Internal Revenue*, 305 U. S. 23.

With the foregoing interpretation in mind we turn to further facts of the case before us. The evidence is reported. The judge made no express findings of subsidiary facts. At the hearing the commissioner of corporations and taxation introduced the trust indenture, a will executed by Hill on the same day as the indenture, the trustee's and executor's inventories, and the death certificates of Hill and his wife, and then rested. The petitioner thereupon introduced oral testimony from Hill's son, his physician, his housekeeper, and others, all of which appears credible and the substance of which was not contradicted. This testimony tended to favor the petitioner. In an equity or probate appeal, where the evidence is reported, it is our duty to examine it and to reach our own conclusions upon it, but where the credibility of witnesses who have testified orally is involved we accept the findings of the trial judge unless they are plainly wrong. Where, however, an ultimate finding rests upon inferences

from facts admitted or found, since mere inferences do not involve the credibility of witnesses, we draw our own inferences without deference to those drawn by the trial judge. *Newburyport Society for the Relief of Aged Women* v. *Noyes,* 287 Mass. 530, 532–533.  *Bratt* v. *Cox,* 290 Mass. 553, 557–558.   *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79, 83–84.   *Comstock* v. *Bowles,* 295 Mass. 250, 253–254. *Veazie* v. *Staples,* 309 Mass. 123, 127.   In this case the issue was the motive of Hill, who was dead and could not testify. The judge's ultimate finding was necessarily based upon inference from such subsidiary findings as he made upon the evidence.   If the judge made all subsidiary findings favorable to the petitioner which there was evidence to support we discover no ground upon which to challenge any of them. But if we assume, as we must, that all such findings have been made, the question remains whether the inference drawn from them by the judge that the trust indenture was not made in contemplation of death was the proper inference. *Malone* v. *Walsh, ante,* 484, 490.   See *Vergnani* v. *Guidetti,* 308 Mass. 450, 455–456.   We address ourselves to that question.

Hill was eighty-seven years and nine months of age when he executed the indenture.   For about forty years his only business had been speculating in the stock market, in which he had made his fortune.   Notwithstanding his age, there was much evidence that he enjoyed extraordinarily good health.   He was physically active, erect in carriage, and agile in step.   He had hardly any gray hair.   His eyesight and hearing were good.   He arose at seven o'clock in the morning.   He shaved himself.   He mowed his lawn himself. He walked about the neighborhood and to church.   He made out his checks and paid his bills.   He made his own income tax returns.   He enjoyed a good appetite.   He was fond of cards and played well.   He read the newspapers and still closely followed the stock market, although he was no longer the active trader that he had formerly been.   He used the trolley cars in going in and out of town.   He dressed well. He was cheerful in temperament and inclined to boast a little of his good health.   He did not talk of death.   He appeared much younger than he was.   Although for many

years before his death he had had a high blood pressure, and knew it, and had it tested from time to time, and for twenty years at least his lips had been blue, he had had no illness and to outward appearances was not worried about his condition. He had arteriosclerosis, which, however, did not appear to be in an advanced state. He had no other physical infirmities. His death practically two years after executing the indenture was caused by cerebral hemorrhage without previous illness. He had been considering the creation of a trust for the benefit of his wife, his son, and his nieces and nephews for more than two years before he made the indenture. Shortly before he made it he inquired at different banks in regard to their methods of handling such matters. He said that he expected the gift tax rates to be raised, and that if he were going to create a trust he had better do it before the increase took effect. The securities placed in trust were valued at $234,236.20. Of this amount $74,525 worth were taken from Hill's box at The First National Bank of Boston and the remainder consisted of all the securities, "a little of everything, — good, bad, and indifferent," which had up to that time been carried in an account which he had maintained with a brokerage house. He told his son that he did not want the responsibility of the account at the broker's, and that "some conservative trust company could take the headaches for a while." The securities placed in trust comprised only about one third of Hill's total estate. At the same time that he executed the trust indenture he also executed a simple will. Both papers were drawn by an attorney to whom he had been referred by the trust company. By the will he left all his property to his son and made no provision for his wife, who was then an invalid, and to whom he appears to have been devoted. She died in February, 1936, before his death. Provision was made for her in the trust indenture to the extent of the income of the trust property during her life. The son was a man of mature years gainfully employed in the broker's office. Hill told his son that primarily he went to the bank and the lawyer for the purpose of having the trust agreement drawn, and that as long as he was there he might as well

have the will drawn; that it would not cost him any more. He had complained of his income taxes. The trust indenture had the effect of reducing the total income tax on what was and what had been Hill's property by about $1,500 the first year.

It is not easy to determine with certainty whether Hill's dominating motive for executing the indenture was to secure the advantages of the trust during his lifetime or to make a partial disposition of his property in anticipation of death. It is possible that his true reasons for making the indenture have not been fully disclosed. The weight that would ordinarily be given to his advanced years is largely offset by his unusual good health and his seeming lack of apprehension of approaching death. The desire to be rid of the annoyance of managing a trading account with a stockbroker and to save income taxes are motives associated with continued living. They may have operated powerfully upon a man in Hill's position. It is true that he included in the trust securities that were not in his broker's account, and that he still retained in his own hands and management the larger part of his property. But these are matters of detail. He would still be saved a substantial burden in the matter of watching investments. The retention of the larger part of his fortune in his own control is consistent with a continued expectation of life. He was entirely relieved of his broker's account. The reason he himself gave for making the indenture, the evidence of which we must assume the judge believed, is entitled to great weight. Motives having reference to continued living are not lacking in the dispositions made in the indenture. Hill's wife was an invalid. We do not know that she had any property of her own. He might become wholly incapacitated. She would receive the income during his life. Protection of his wife during the remainder of his life by means of a substantial fund in the hands of a trustee in which he had confidence, guarded against risks that might be created either by him or by her, may have been an influential consideration in his mind. If the wife died before Hill did, his son would likewise receive protection, and his financial position would be securely established during the remainder of Hill's life. The fact that the dispositions made

in the indenture also reached beyond Hill's lifetime is not decisive. Some such dispositions are to be expected in any trust of this kind. In *Colorado National Bank* v. *Commissioner of Internal Revenue,* 305 U. S. 23, at page 27, the court said, "The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death.' Broadly speaking, thoughtful men habitually act with regard to ultimate death, but something more than this is required in order to show that a conveyance comes within the ambit of the statute." It is to be noted that under the terms of the trust nothing was to happen upon Hill's death. That event worked no change in the rights of the beneficiaries. Some weight is to be given to the fact that Hill made a will at the same time that he made the indenture, but we must accept as true the evidence of his statement that he went to the bank and to the lawyer primarily for the purpose of having the trust agreement drawn, which he had been considering for more than two years, and that the will was incidental. That the trust and the will would be drawn with some reference to each other was inevitable whichever was dominant in Hill's mind. We suppose it is not uncommon for a man of property to make at the same time a trust from motives pertaining to life and a will in contemplation of death. Certainly this is not impossible.

Hill's advanced age of course cannot be overlooked. But even aged men, especially if enjoying good health, do not commonly go about their business under the mental shadow of death. It would be risky to decide upon age alone. Generally there will be other factors. There are other factors here, but in view of the limitations to which we have previously adverted under which we must act in dealing with facts already passed upon by the Probate Court, we are not satisfied that the commissioner has sustained the burden which rests upon him of proving that the inference ought to be drawn that Hill's preponderating motive originated in contemplation of death. It is the predominating motive that prevails. *First Trust & Deposit Co.* v. *Shaughnessy,* 134 Fed. (2d) 940, 942.          *Decree affirmed.*