JAMES E. O'DONNELL & another, executors, & others *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION.

Middlesex.    November 8, 1944. — February 7, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Taxation,* Succession tax.    *Probate Court,* Jurisdiction, Succession tax,
Appeal.

A jurisdictional question appearing in the record of an appeal from a
decree, entered in a Probate Court was determined in this court ad-
versely to some of the appellees although it was not raised by either
party.

A petition in a Probate Court drawing in question the propriety of a suc-
cession tax assessed upon individual beneficiaries under a deed of trust
could not be treated as a petition brought under G. L. (Ter. Ed.)
c. 65, § 30, although trustees under the deed, who also were executors
of the will of the donor, joined as petitioners with the beneficiaries.

A donee under a deed of trust cannot maintain a petition under G. L.
(Ter. Ed.) c. 65, § 27, for abatement of a succession tax assessed upon
him as such if he has not paid the tax.

Evidence of the circumstances in which the owner of four hundred ninety-
eight of five hundred shares of stock of a corporation, comprising
less than half of his estate, when sixty-six years of age and in good
health and a few weeks before his death, transferred the shares by
an irrevocable deed of trust to keep ownership of the corporation's
business in blood relatives of the founder and to prevent his wife
from sharing in it after his death, and of the donor's retaining manage-
ment of the business after the transfer and of the size of a salary he
paid himself, required an inference that the donor in making the
transfer was predominantly actuated by motives springing from a
contemplation of his death although he could not be said to have so
acted with any consciousness that his death was imminent; and bene-
ficiaries of the trust properly were assessed a tax under G. L. (Ter.
Ed.) c. 65, §§ 1, 3, as amended.

PETITION, filed in the Probate Court for the county of
Middlesex on March 12, 1943.

The case was heard by *Leggat,* J.

*W. F. Hayes,* Assistant Attorney General, for the re-
spondent.

*R. B. Walsh,* for the petitioners.

DOLAN, J. This petition (alleged to have been brought under G. L. [Ter. Ed.] c. 65, § 30) is by James E. O'Donnell and Katherine E. Butler as the executors of the will of Edward J. O'Donnell, late of Lowell, deceased, hereinafter referred to as the donor, and also as the trustees named in a trust indenture dated July 21, 1941, and as beneficiaries named therein in certain contingencies, and by James F. O'Donnell, a beneficiary named therein, to determine the validity of certain succession taxes assessed by the respondent under G. L. (Ter. Ed.) c. 65, §§ 1, 3, in their amended form. The petitioners James E. O'Donnell and Katherine E. Butler were brother and sister of the donor, and the petitioner James F. O'Donnell was his nephew. The case comes before us on the appeal of the respondent from the decree entered by the judge. The evidence is reported. In an equity or probate appeal, where the evidence is reported, it is our duty to examine it and to reach our own conclusions upon it, but where the credibility of witnesses who have testified orally is involved we accept the findings of the trial judge unless they are plainly wrong. Where, however, an ultimate finding rests upon inferences from facts admitted or found, since mere inferences do not involve the credibility of witnesses, we draw our own inferences without deference to those drawn by the trial judge. In the instant case, the motive to be ascertained being that of one deceased, who could not testify, the question is whether the inference drawn by the judge from the evidence that the trust indenture was not made in contemplation of death was the proper inference. *New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639, 643–644.

There was evidence as follows: James F. O'Donnell had been engaged in the undertaking business in the city of Lowell for many years. Upon his death two of his sons, Thomas J. and Edward J. O'Donnell, the donor, continued the business. Thomas died in 1929 leaving one son, the petitioner James F. O'Donnell. After the death of Thomas, the donor continued the business as owner. The petitioner James F. O'Donnell had been employed in the business

while a boy during the life of his father, becoming a full-time employee under the supervision of the donor after he completed his education.   At some time not disclosed by the record the business had been incorporated under our laws, with an authorized issue of five hundred shares, of which the donor held four hundred ninety-eight shares. His brother, James E. O'Donnell, and his sister, Katherine, held one share each.   On July 21, 1941, the donor executed a trust instrument, transferring his shares in the corporation to James E. and Katherine upon trust to pay the net income "if any" therefrom to his nephew, James F. O'Donnell, and further providing, so far as here material, as follows: "On the written request of said James F. O'Donnell to the trustees made not less than ten years from the date of this instrument the principal of the trust fund shall be transferred by the trustees to him and the trustees may in their discretion transfer the principal to him on his written or verbal request of an earlier date.   If there is no request by the said James F. O'Donnell within twelve years from the date of this instrument for such transfer the trustees shall transfer the principal of said trust fund to themselves as individuals in equal shares, free and clear of all trusts. By the word 'request' as before used in this article is meant James F. O'Donnell's own personal request and the meaning of the word 'request' as above used excludes any asking by any agent of James F. O'Donnell or by any executor, administrator or assign of the said James F. O'Donnell. . . . The transfer to said trustees in said trust is hereby agreed to be irrevocable and is declared to be irrevocable by the donor. . . . One of the objects of the donor to be attained by this trust is, so far as appears possible, to keep the business of said corporation in the ownership of individuals who are blood relatives of the founder of the business, the late James F. O'Donnell."   At the time of the execution of the trust instrument an agreement was prepared in which it was provided that the donor was to be manager of the business as long as he should live at a salary of $7,500 a year.   This provision was voted by the stockholders and the vote was recorded, but the agreement

was not executed because its terms were not satisfactory to
the donor, and he continued to draw salary at the rate of
$15,000 a year until his death. The donor died testate on
August 29, 1941. Under the terms of his will dated May
12, 1936, which was duly proved and allowed, he devised
and bequeathed to his wife, Etta (who survived him), such
part of his estate as she would receive had he died intestate,
and two thirds of the residue to his sister, Katherine, and
one third to his brother, James, nominating them as execu-
tors. On July 10, 1942, the trustees and the beneficiary
James F. O'Donnell entered into a written agreement un-
der seal reciting that the latter had made a verbal re-
quest to the trustees to transfer the principal of the trust
estate to him, and also reciting the trustees' willingness
to exercise their discretion to terminate the trust, which
they agreed to do upon payment to them individually for
their remainder interests of the sum of $8,250 each; and
the trustees further agreed to deliver to James F. the four
hundred ninety-eight shares of the corporation, and as in-
dividuals to transfer to him the one share of stock held by
each of them, and to resign their offices in the corporation.
In turn James F. agreed to pay the sum of $8,250 to each
of them. The agreement was to take effect upon its exe-
cution. [1]

The respondent, hereinafter referred to as the commis-
sioner, placed a valuation upon the shares of the corpora-
tion of $82,600 but assessed a tax of $7,216 on the sum of
$65,600 to the donee James F. O'Donnell. The petitioners
alleged that the commissioner also assessed a tax of $363
to James E. O'Donnell "donee" on a valuation of $8,250,
and a tax of $363 to Katherine E. Butler "donee" on a
valuation of the same amount. The judge entered a de-
cree as follows: "After hearing and consideration, the court
doth order and decree that said instrument, dated July 21,
1941, was not a deed, grant or gift made in contemplation
of death; that the respondent determined and levied the
taxes against petitioners, as set forth in the bill of com-

---

[1] The present case does not involve the propriety or validity of that trans-
action.

plaint without right and contrary to law, and that said taxes are hereby abated, and that so much of said taxes as have been collected from the petitioners, James E. O'Donnell and Katherine E. Butler by respondent, namely the sum of Three Hundred Seventy-three Dollars ($373) [*sic*] from each of them, be repaid to them with interest at the rate of six percent from the date of payment."

While the parties have not raised a jurisdictional question that arises on the record, we feel that we should take notice of it of our own motion. See *Eaton* v. *Eaton*, 233 Mass. 351, 364; *Eustace* v. *Dickey*, 240 Mass. 55, 86; *Moll* v. *Wakefield*, 274 Mass. 505; *Maley* v. *Fairhaven*, 280 Mass. 54. The jurisdictional question involved is whether the proceeding, in so far as it purports to be brought under G. L. (Ter. Ed.) c. 65, § 30, for determination of the validity of the tax, can be maintained. While the executors of the will of the donor and the trustees under the deed of transfer are parties petitioner, the taxes assessed on the transfer were not assessed to them in either capacity, but were assessed to them and to the petitioner James F. O'Donnell individually. It further appears that when the tax was assessed the trust had terminated and neither James E. nor Katherine was in possession of the property under the transfer in trust, and the commissioner testified that he did not assess the taxes against the estate of the donor. It is to be assumed that he assessed the taxes in question in accordance with G. L. (Ter. Ed.) c. 65, § 7, which provides in part that "In case of any deed, grant or gift of a life interest or term of years, the donee for life or years shall pay a tax only on the value of his interest, and the donee of the future interest shall pay his tax when his right of possession or enjoyment accrues." The estate of the donor is not concerned with the taxes in question. It follows that the case cannot be treated in effect as a petition for instructions by the executors or trustees under § 30, as in *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 642, or by James F. O'Donnell. The main tax was assessed to him as a donee. He has neither alleged nor proved payment, and in the

decree entered by the judge the latter impliedly found that he had not paid the tax. With respect to him the petition cannot be entertained properly for abatement under G. L. (Ter. Ed.) c. 65, § 27, because a condition precedent to such a proceeding is that the tax shall have been paid. It follows that in so far as the petition raises the question of the validity of the tax assessed to him as donee it cannot be maintained.

Since the taxes assessed to James E. O'Donnell and Katherine E. Butler individually appear to have been paid, we treat the petition in so far as they are concerned as one by them for abatement under § 27. The issue is whether the evidence supports the conclusion of the judge that the transfer in question was not made in contemplation of death.

General Laws (Ter. Ed.) c. 65, § 1, provides in part that property "which shall pass by will, or by laws regulating intestate succession, or by deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth, made in contemplation of the death of the grantor or donor . . . to any person, absolutely or in trust, . . . shall be subject to a tax. . . ." Section 3, as amended by St. 1939, c. 380, so far as here material, provides that "Any deed, grant or gift completed inter vivos, except in cases of bona fide purchase for full consideration in money or money's worth, made not more than one year prior to the death of the grantor or donor, shall, prima facie, be deemed to have been made in contemplation of the death of the grantor or donor." Since the transfer in question was made only a few weeks before the death of the donor, the establishment of that fact by virtue of the statute (§ 3) constituted prima facie evidence that the transfer was made by the donor in contemplation of death. The meaning of the words "made in contemplation of the death of the grantor or donor" was first construed by this court in *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 642, 643, in which it was said that the question whether the grant or gift was so made is one of fact, and in which, quoting *United*

*States* v. *Wells,* 283 U. S. 102, the tests by which the issue is to be decided are recited. For the moment it is sufficient to say that it is settled that in each case the circumstances must be scrutinized "to detect the dominant motive of the donor in the light of his bodily and mental condition." *United States* v. *Wells,* 283 U. S. 102, 119. *New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639, 643. Further facts disclosed by the evidence may be summed up as follows: At the time of his death on August 29, 1941, the donor was sixty-six years of age. In January, 1936, he was not feeling well and remained at home for a few days. In the same year, following the death of his father, he suffered a nervous breakdown, but recovered and thereafter appeared to be in good health. Except for that illness, he was well and rugged for a year before his death and never complained of ill health, and his disposition was always jovial. At the time of the transfer in question he was planning his usual vacation. He dined with friends and attended the theatre the night before he died, having attended to business as usual during the day. The cause of his death was "arteriosclerosis of the heart, coronary occlusion." The purpose declared in the deed of trust was, "so far as appears possible, to keep the business of said corporation in the ownership of individuals who are blood relatives of the founder of the business, the late James F. O'Donnell" (the donor's father). We have already recited the details of the founding of the business, those who conducted it then and thereafter, and the employment in it of the beneficiary James F. O'Donnell. For about ten years prior to the execution of the trust instrument the donor had talked about so doing. He wanted ultimate ownership to be in his brother and sister or in James F., the grandson of the founder. He desired the latter to have the business when he proved himself capable of conducting it. The donor's wife was importuning him to transfer part of the business to her brother who once had been employed by him. She "kept nagging at him," so that at one time as a result he went away for a week. Finally he consulted his brother James, who

is an attorney, as to the best method of getting the business out of his hands so that his wife would not continue to annoy him. He told James that he wanted to be able to go home and say, "That business is not mine any more. I have given it away. It is not going to be part of my estate. He will not be manager of it so long as I live, so there will be no further question about it for me to convey this property to your brother." He told the attorney who drew the trust deed that he did not want his wife to get the business because, if she got it, the business would be in the hands of someone who was not a blood relative of the founder. We have already recited the facts concerning the donor's activities in the business after the transfer, his insistence on managing it, his dissatisfaction with the salary proposed to be paid to him, and his drawing of twice that amount on a yearly basis — facts that support the inference that he intended to continue in practical if not legal control during life.

In applying the guides adopted in *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, we start with the proposition that the object of the statute (G. L. [Ter. Ed.] c. 65, § 3) is to reach substitutes for testamentary dispositions and thus to prevent the evasion of succession and inheritance taxes. The fact that the donor was seemingly in good health when he made the transfer is of great, but not necessarily of decisive, importance. The determinative motive may be present without consciousness that death is imminent. The age of the donor does not furnish a decisive test; the statute does not embrace gifts that spring from purposes associated with life rather than with the distribution of property in anticipation of death. Examples of purposes associated with life may be a desire to be relieved of responsibilities, to provide that children may be independently established in the lifetime of the donor, without particular consideration of his death, to recognize special needs, or to discharge moral obligations. *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 643.

In the instant case, we are of opinion that the proper

conclusion is that, although the donor cannot be said properly to have made the gift in question with any consciousness that his death was imminent, he nevertheless acted with the intention of retaining domination of the business in fact as long as he lived although giving it away in legal form, and with an understanding that while legal control of the business would be in the trustees by virtue of the transfer of the shares of the corporation, nevertheless with their acquiescence, or, in case of termination of the trust in his lifetime, with that of the beneficiary James F. O'Donnell, he, the donor, would retain control in fact as manager. It is apparent that the contract drawn to that end, the terms of which were approved by vote of the corporation, was to effect that purpose. Its rejection by the donor and his conduct after the transfer in fixing his own compensation as manager give evidence that he was exercising control of the business without demur on the part of the trustees, while at the same time under the form of the gift preventing his wife from acquiring any interest therein in the event of his death. While he could thus prevent his wife from so inheriting since the gift was of personal property (*Redman* v. *Churchill*, 230 Mass. 415, 418; *Kerwin* v. *Donaghy, ante,* 559), nevertheless that intention on his part is an element proper to be considered in determining his predominant motive. Against the foregoing considerations there may be set the fact that the gift comprised less than one half of the property of the donor, and it may be argued that the retention by him of the rest of his property under his control is consistent with a continued expectation of life. See *New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639, 646. But in the instant case, as distinguished from the case just cited (see also *Welch* v. *Hassett,* 90 Fed. [2d] 833, 835), the donor did not seek to be relieved from the responsibility of management of the property in question. On the contrary he did not intend to shift that burden to others, but intended to continue to carry it himself as long as he lived, and he did so in fact. In the light of the evidence of the amount of compensation

that the donor expected to receive during his life as manager of the business and the amount therefor that he drew after the transfer, the reference in the trust indenture to the payment of the net income "if any" from the trust estate is not without significance. "Substance and not form is to be regarded in the application of tax laws." *Anderson v. Commissioner of Corporations & Taxation*, 312 Mass. 40, 44.

The burden of proving that the gifts in question were not made in contemplation of death rested upon the petitioners for abatement, under § 27. Compare *New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 642, where the proceeding was in effect for instructions under § 30. The fact that the transfer was made but a few weeks before the donor's death was evidence in favor of the commissioner under § 3. Dealing with the question of fact, on all the evidence, we think the proper conclusion is that the donor was predominantly actuated by motives springing from a contemplation of his death.

It follows that the decree entered in the court below must be reversed and that instead a decree must be entered dismissing the petition.

*So ordered.*