ERNEST M. HOPKINS & another, executors, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Middlesex.   May 7, 1946. — September 12, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Domicil. Residence. Taxation,* Succession tax. *Evidence,* Presumptions and burden of proof.

To have been an inhabitant of the Commonwealth within the meaning of the succession tax statute, G. L. (Ter. Ed.) c. 65, as amended, a decedent must have been domiciled here.

Upon a petition by an executor against the commissioner of corporations and taxation under G. L. (Ter. Ed.) c. 65, § 30, to determine whether a succession tax properly was assessed against the estate of the decedent as an "inhabitant" of the Commonwealth, the burden was on the commissioner to prove that the decedent died domiciled here.

---

Upon the evidence reported on an appeal from a decree, entered after a hearing of a petition brought by the executor of a will against the commissioner of corporations and taxation under G. L. (Ter. Ed.) c. 65, § 30, a finding implicit in the decree, that the decedent, who had had a domicil of origin in New Hampshire and was claimed still to have had it at the time of his death, was not domiciled in this Commonwealth at that time, was not plainly wrong although he had had his place of business and a residence here for many years.

PETITION, filed in the Probate Court for the county of Middlesex on December 26, 1944.

The case was heard by *Monahan,* J.

*G. B. Rowell,* Assistant Attorney General, (*R. J. Cotter, Jr.,* of the Attorney General's office, with him,) for the Commissioner of Corporations and Taxation.

*F. H. Stewart,* (*J. G. Bryer* with him,) for the petitioners.

WILKINS, J. This is a petition under G. L. (Ter. Ed.) c. 65, § 30, in the nature of a petition for instructions (*New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639, 641–642), by the executors of the will of Sherman B. Ward, who died July 3, 1942, allegedly domiciled in Wilton, New Hampshire, to determine whether the estate is liable for an inheritance tax, payment of which has been demanded by the respondent solely on the ground that the deceased was an inhabitant of Newton in this Commonwealth. G. L. (Ter. Ed.) c. 65, § 1. To be an inhabitant of the Commonwealth within the meaning of the inheritance tax statute is equivalent to being domiciled here. See *Ness* v. *Commissioner of Corporations & Taxation,* 279 Mass. 369, 373. The judge entered a decree reciting that the deceased was an inhabitant of New Hampshire at the time of his death, and ordering the payment of $641.13 admittedly due, with interest. The respondent appealed, and the case is here with a report of the evidence. G. L. (Ter. Ed.) c. 215, § 9. There was no statement of findings of subsidiary facts. *Tuells* v. *Flint,* 283 Mass. 106, 108–109. *New England Trust Co.* v. *Commissioner of Corporations & Taxation,* 315 Mass. 639, 643–644. *O'Donnell* v. *Commissioner of Corporations & Taxation,* 317 Mass. 664, 665. The entry of the decree implies a finding of every fact, permissible on the evidence, to support the conclusion of the

judge, and the question for decision is whether the finding contained in the decree that the deceased was an inhabitant of New Hampshire, implicit in which was a finding that he was not domiciled in Massachusetts, was plainly wrong. *Slater* v. *Munroe,* 313 Mass. 538, 540.

The deceased was born January 30, 1890, at the home of his parents at 206 Lafayette Road, Portsmouth, New Hampshire, where he resided exclusively during his minority. He attended the Portsmouth public schools, and was graduated from Phillips Exeter Academy in 1909 and from Dartmouth College in 1913. In 1911 he became a registered voter in Portsmouth. In 1912 he was married at Hanover, New Hampshire, to Myra Della Gordon. In 1913 he was employed in Portsmouth, and lived there with his wife in a house owned by his uncle. For the next two years he was employed by a chemical company in New York State, at first in Brooklyn and later in Buffalo. It is undisputed that up to this time the deceased was domiciled in Portsmouth.

In 1916 the deceased acquired a stock interest in, and became treasurer of, Stowe-Woodward Company, which was engaged in rubber manufacturing in Newton in this Commonwealth. In 1931 this company was succeeded by Stowe-Woodward, Inc., of which he was a stockholder and treasurer and later president. This was the only business of the deceased, who received a salary of $25,000 in some years and of $50,000 in others.

The deceased had the front room in the Ward homestead at Portsmouth, which was furnished with his own furniture, where he kept personal effects, apparently from 1916, until his mother's death in 1941. His father died in 1927. He had no children, and his only other relatives were a brother and an uncle living in Portsmouth.

From 1916 to 1924 the deceased and his wife had a rented room or apartment in several places in Newton. In 1924 he purchased in his own name a house and land at 20 Prentice Road, Newton, the deed describing him as of Portsmouth. This house, which had a valuation of $16,600 at the time of his death, contained seven rooms and was of Dutch Colonial design.

In 1933, the deceased purchased and took title in his wife's name to a building and six acres of land, known as "The Old Red Mill," at Wilton, New Hampshire. He later acquired four additional acres. He remodeled the building into a house of seven rooms, fitted for year round occupancy, and built a servant's house and garage. He spent approximately $25,000 on improvements, which included a steam-heating plant which burned oil, shower baths, electricity for lighting and cooking, a large stone fireplace, two porches, an artesian well eighty feet deep with electric pumps, an enclosed barbecue with roof and stone floor, an outdoor fireplace, a dam at the outlet of a pond, a trout pool at times stocked with two thousand fish, a portable bridge, a large stone wall enclosing the property, and landscaping.

The deceased was seriously ill during the last two years of his life and underwent two major operations. He was living at Wilton when fatally affected, and was brought to a hospital in Boston where he died. He was buried in Wilton. His wife, who received a life estate under his will, survived him by only eight months, and the residuary legatees, Phillips Exeter Academy (one tenth) and Dartmouth College (nine tenths), became entitled to receive their shares.

The deceased considered his domicil to be 206 Lafayette Road, Portsmouth, until April 1, 1940, and Wilton, New Hampshire, thereafter. He successfully resisted an effort to have his name and that of his wife removed from the Portsmouth voting list. In 1938 and 1941 he convinced the Newton assessors that they should abate as "illegal" poll taxes assessed to him. In 1923, in 1934 and in 1935, he filled out for the income tax division of the department of corporations and taxation statements as to domicil, in which he claimed his domicil to be at 206 Lafayette Road. Each time the entry "suspend" was made by the income tax division. In 1941 he advised the income tax division that his wife was "a legal resident of New Hampshire" and had been for over twenty-five years, and received a written acknowledgment that his statement would receive "full consideration." He voted in Portsmouth until 1940, and thereafter was on the voting list in Wilton, where he voted once and

paid a poll tax. After the passage of an income tax statute he paid such taxes in New Hampshire. He registered from New Hampshire for the draft in 1917 and in 1942. Various other public records such as his automobile registration and his operator's license, his registration under the social security act in 1936, and the certificates of condition of his company, are in accord with the domicil of the deceased being in Portsmouth until 1940 and in Wilton thereafter.

There are factors not previously mentioned which the respondent contends show that the domicil of the deceased was in Newton. He was a member of a Boston club, a resident member of one golf club in Newton, a member and director of another, and a resident member of the Norumbega Lodge of Masons in Newton in which he twice applied for degrees. He attended, but was not a member of, a church in Newton, to which he contributed. He made charitable donations in Newton. He maintained a large bank account in one Boston bank, a checking account in another Boston bank, and a savings account and a safety deposit box in a Newton bank. On the other hand, he made large donations to Dartmouth College, and "if anybody [in Wilton] needed help they got it."

The judge could have found in accordance with evidence that the deceased was in New Hampshire the "biggest part of year"; that he lived in Newton as "a matter of convenience"; that Newton had "in no way been anything but a temporary residence"; that during the period when he claimed domicil in Portsmouth he expected to live there permanently; that he and his wife were frequently at the Ward homestead during his mother's lifetime; that he bought the Wilton property as a "permanent home"; that at least from 1940 on he and his wife stayed in Wilton from about May to October of each year; that he spent most of his winters in California or travelling abroad during which periods the Newton and Wilton houses were closed; that after these trips he would almost immediately go to Wilton; that the Newton house was closed when he was in New Hampshire; and that "his family ties and general interests" were in New Hampshire.

It is well settled that a person may have a residence in one place and his permanent home or domicil in another. *Tuells* v. *Flint*, 283 Mass. 106, 109–110, and cases cited. *Russell* v. *Holland*, 309 Mass. 187, 191. *Rummel* v. *Peters*, 314 Mass. 504, 511–512. "Domicil of origin or domicil acquired remains until a new one is acquired." *Hallet* v. *Bassett*, 100 Mass. 167, 170. *Ness* v. *Commissioner of Corporations & Taxation*, 279 Mass. 369, 371. The determination of domicil is mainly a question of fact. *Commonwealth* v. *Bogigian*, 265 Mass. 531, 537. *Kennedy* v. *Simmons*, 308 Mass. 431, 435. *Levanosky* v. *Levanosky*, 311 Mass. 638, 642. The burden of proof was upon the commissioner who seeks to establish the tax (*New England Trust Co.* v. *Commissioner of Corporations & Taxation*, 315 Mass. 639, 642), and we cannot say that the judge was plainly wrong in finding in effect that the deceased was not domiciled in Massachusetts.

*Decree affirmed with costs.*