JEFFREY E. HORVITZ *vs.* COMMISSIONER OF REVENUE.

No. 99-P-549.

Suffolk. February 12, 2001. - April 24, 2001.

Present: ARMSTRONG, C.J., GREENBERG, & COWIN, JJ.

*Taxation,* Income tax, Abatement. *Evidence,* Presumptions and burden of proof. *Administrative Law,* Substantial evidence, Agency.

Discussion of the allocation of the burden of proof in tax cases. [391-393]
The Appellate Tax Board erred in allocating to a taxpayer, who had made a prima facie showing that his domicile was elsewhere, the burden of proof, specifically the burden of persuasion, on the issue whether his residence remained there after a certain date; the burden remained on the party asserting that the domicile had changed, in this case, the Commissioner of Revenue [391, 393-395]: where the improper allocation may have affected the administrative outcome, the board's decision was vacated and remanded for further proceedings [395-397].

APPEAL from a decision of the Appellate Tax Board.

*Kenneth W. Salinger* for the taxpayer.

*Juliana deHaan Rice,* Assistant Attorney General, for the Commissioner of Revenue.

COWIN, J. Asserting that the taxpayer, Jeffrey E. Horvitz, had changed his domicile from Florida to Massachusetts effective September 2, 1991, the defendant Commissioner of Revenue (commissioner) assessed personal income taxes against him from that date to December 31, 1992. Horvitz paid the assessed amount, but denied that he had changed his domicile and applied for an abatement in full.[1] When the commissioner denied the abatement application, Horvitz, conformably with G. L. c. 58A, § 6, appealed to the Appellate Tax Board (board). After a hearing before a single member, the board upheld the com-

---

[1]The commissioner initially assessed $821,381.47 in taxes, interest and penalties. After Horvitz paid but before he applied for the abatement, the commissioner refunded him $88,656.83 in penalties and associated interest.

missioner's denial of Horvitz's abatement claim, and Horvitz has appealed to this court. See G. L. c. 58A, § 13. We hold that the board improperly assigned to Horvitz the burden of proof on the issue of change of domicile. Because this may have affected the administrative outcome, we vacate the board's decision and remand the matter for further proceedings.

1. *Procedural history.* The board held evidentiary hearings, during which it heard five witnesses (including Horvitz) and received extensive documentary exhibits. Subsequently, the board determined that the commissioner had correctly assessed Horvitz for personal income taxes as a domiciliary of Massachusetts and denied his abatement claims. Pursuant to G. L. c. 58A, § 13, Horvitz requested findings of fact and a report, and thereafter the board provided a comprehensive statement.

In the opinion section of its findings of fact and report, the board characterized the case as a statutory tax abatement proceeding under G. L. c. 62C, § 39, and ruled that therefore the party seeking the abatement (Horvitz) had the burden of proof. This meant that Horvitz was assigned the burden of persuading the board with respect to the ultimate issue, i.e., whether he changed his domicile to Massachusetts on September 2, 1991. The board then found that a change of domicile from Florida to Massachusetts had occurred in accordance with the commissioner's determination, thereby justifying the assessment of personal income taxes against Horvitz.

Horvitz appealed, arguing essentially two points: (1) that the board erred in placing upon him the burden of proving that he had not changed his domicile from Florida to Massachusetts; and (2) that the board's finding that a change of domicile had occurred was not supported by substantial evidence.

2. *Material facts.* For the most part the board's subsidiary findings, set out below in summary form along with other uncontroverted evidence, do not appear to be genuinely disputed. A native of Ohio, Horvitz married Linda Hill in California in 1973. The couple lived in California until 1980, when they moved to Florida. They lived in Florida from 1980 through their separation in 1989, and then lived separately in Florida until 1991.

Two daughters were born of the marriage: Christina in 1984

and Caroline in 1988. Caroline is severely disabled with cerebral palsy and a hearing disability. Because of her handicap, she requires extensive special education, medical and related services. Horvitz, a man of considerable wealth, supported his wife and children and paid Caroline's medical expenses to the extent that they were not covered by insurance.

When Horvitz and his wife separated in November, 1989, Linda retained custody of the children by agreement.[2] Horvitz, mindful of the needs of his younger child, investigated available services and treatments, and concluded that Caroline would best be served by residence in an older urban center with a greater infrastructure of medical facilities and schools for the deaf than was available in Florida. By 1990, he had concluded that the Boston area would be the best fit.

During 1990 and 1991, Horvitz took a variety of steps to move his former wife and his two children to the Boston area. He purchased a large house for Linda and the children in the Pride's Crossing area of Beverly. For himself Horvitz purchased, renovated and furnished another luxurious house in Beverly Farms. He enrolled Christina in the Shore Country Day School in Beverly for the 1991-1992 school year. In letters to officials at Miami Country Day School, where Christina earlier had been enrolled, he stated that "[w]e have decided to move to the Boston area" and "the family will in fact be moving to Boston." In a second addendum to the post-nuptial agreement (see note 2, *supra*), Horvitz and Linda stated, "[t]he Husband and Wife agree that they desire to reside and to have their minor children reside in the 'Beverly-Manchester' Massachusetts area."

On September 2, 1991, Horvitz, Linda, and their two

---

[2]The parties had entered into a post-nuptial agreement which anticipated the possibility of their separation. The agreement provided in part that "unless there are compelling circumstances to the contrary, the parties will share parental responsibility for their minor children. In the event that the parties separate, the Wife shall serve as the residential parent. At the option of the non-residential parent, that parent shall have reasonable rights of access to the children . . . . [T]he parties shall consult with each other on all significant decisions involving the children['s] best welfare."

daughters traveled from Florida to Massachusetts by airplane.[3] Thereafter, Horvitz shipped certain personal belongings from Florida to Massachusetts. At various times during the period in question, he used, within Massachusetts, one or another of two automobiles garaged there. Each of the cars, however, was purchased and registered in Florida. He opened a personal checking account at a Massachusetts bank and a post office box in Massachusetts for use as a local mailing address.

In September, 1991, a company of which Horvitz was an officer leased office space in Beverly for his use. Horvitz relocated one of his two secretaries from Florida to Massachusetts to work for him there. He transferred many business and personal records from Florida to the Beverly office.[4]

Throughout the period at issue, Horvitz visited his children in Massachusetts as often as possible. When present in Massachusetts, he often saw the children every day.[5] In addition, he attended sign language classes in Massachusetts on an average of slightly less than once a week.

Following the Horvitzes' separation, Linda retained physical custody of the children. Horvitz saw the children often, but did not have unlimited visitation rights. While Horvitz had considerable contacts with Massachusetts during this period, he also maintained extensive personal and business ties to Florida. When Horvitz and Linda separated, Horvitz purchased and renovated a luxury condominium in North Miami Beach, Florida. He employed a full-time housekeeper at this residence. In addition, he made offers on other Florida residential properties. In partial satisfaction of a claim against a developer

[3]Linda, with the children, and Horvitz, separately, moved into leased quarters until their respective residences were ready for occupancy.

[4]While the board made no finding on the subject, there was unrebutted testimony that some of those records were transferred in connection with Horvitz's pending divorce proceedings in Massachusetts.

[5]The board did not attempt to make a finding regarding the amount of time spent by Horvitz in Massachusetts as opposed to Florida or elsewhere. The only evidence with a bearing upon this were visitation schedules apparently prepared as a way of informing Linda in advance when Horvitz would be available to see the children. The schedules reflect planned visitation in Massachusetts on 41 days in November and December of 1991, and on 266 days in 1992. However, there was evidence that the visitation schedules often did not translate into actual visits.

in connection with one of these offers, he negotiated a free health club membership for himself through the year 1995.

Horvitz continued to vote in Florida, retained his Florida driver's license, and filed tax returns as a Florida resident. There was evidence that he maintained an active social life in Florida; he testified that during that period he had had a half-dozen "serious or active" dating relationships there. By contrast, he apparently had few social contacts and attended few social events in Massachusetts. He continued to serve on the boards of directors of two non-profit organizations in Florida, and was a volunteer consultant to a third.

Horvitz retained the bulk of his investment activity in Florida. He kept his primary bank account there, maintained all of his brokerage accounts there, and remained a passive investor in a number of Florida partnerships. He also continued to maintain a business office in Florida at which he employed his second, part-time, secretary. And he continued his art collection and art dealing activities, maintaining approximately ninety percent of his collection in Florida, while continuing to lend items to Florida art museums. There is also evidence that during the period at issue he obtained most of his personal services in Florida, including those of physicians, his attorney, his accountant, his travel agent, his florist and his barber. He patronized two Florida health clubs.

Horvitz met Carol Sunday in Florida in December, 1990. The relationship developed while they lived in Florida, and in May, 1992, Carol and her son moved into Horvitz's Florida condominium. Carol also visited Horvitz a number of times at his Massachusetts residence during 1992.[6] She took up residence at his Massachusetts house in early 1993.

3. *Ultimate findings.* The board found that Horvitz "intended to make Massachusetts his home for an indefinite period, and was physically present in the Commonwealth. His intent to remain in Massachusetts indefinitely was unchanged throughout the relevant time period." Accordingly, the board concluded that Horvitz had in fact changed his domicile to Massachusetts ef-

---

[6]Carol's son had, in June, 1992, been enrolled in a private school in Canaan, New Hampshire, for which Horvitz paid the tuition expenses.

fective September 2, 1991, and upheld the commissioner's assessment of personal income taxes for the subsequent period.

In arriving at its conclusion, the board focused particularly upon Horvitz's concern for his children's welfare and his desire to be with them to the greatest extent possible. "The tie that bound him to his daughters appeared, from all the evidence, to exert the strongest pull of any single factor on [Horvitz's] home life." In this regard, the board observed that Horvitz had considerable misgivings regarding his estranged wife's ability to care for the children even while he was orchestrating their move to Massachusetts. Under the circumstances, the board reasoned that Horvitz was cognizant of the fact that he would have to be present in Massachusetts on a continuing basis if the move were to succeed. It followed, according to the board, that he purposefully shifted the center of his social and domestic life to Massachusetts.

The board discounted Horvitz's stated intent to remain a Florida domiciliary, as well as his effort to obtain legal advice to accomplish that result. Characterizing his Florida connections as "rather more form than substance," the board concluded that "[s]uch factors were entitled to less weight than the indicators placing his domicile in Massachusetts."

4. *Burden of proof.* The board allocated to Horvitz the burden of proof — and specifically the burden of persuasion — on the issue of change of domicile. Allowing that the commissioner was required to produce evidence of a domicile change upon a prima facie showing by the taxpayer that his domicile originally was elsewhere (a showing plainly made here), the board nevertheless ruled that the burden of persuasion on the issue would remain throughout with the taxpayer. This latter ruling was error.

The board may have been misled by a somewhat less than crystal clear treatment of burden of proof in prior tax cases. It has frequently been said that the burden is upon the taxpayer to establish his right to an abatement. See *Staples* v. *Commissioner of Corps. & Taxn.*, 305 Mass. 20, 26 (1940) (income tax on annuity income); *William Rodman & Sons, Inc.* v. *State Tax Commn.*, 373 Mass. 606, 610 (1977) (excise tax on cigarettes); *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 603 (1986) (use

tax on boat). See also *Costello* v. *Commissioner of Rev.,* 391 Mass. 567, 569 (1984) (deductions from taxable income).

However, in practice the allocation of the burden of proof where a taxpayer seeks relief from imposition of a tax has been far from uniform. In *DiStefano* v. *Commissioner of Rev.,* 394 Mass. 315 (1985), industrial commissaries that sold bulk foods to independent canteen truck drivers and cafeterias sought a declaratory judgment that such sales were not subject to tax under G. L. c. 64H, but were entitled to an exemption under G. L. c. 64H, § 6(*h*), because the transactions in question were not sales by "restaurants" that sell "meals." *DiStefano* v. *Commissioner of Rev., supra* at 325. The Supreme Judicial Court rejected the commissioner's contention that the taxpayers bore the burden to prove exemption from the sales tax, holding that the sales tax exemption in question was not "the type of exemption concerning which a special burden rests upon a taxpayer, claiming the benefit of the provision, to bring himself within its scope." *Ibid.,* quoting from *Greenfield Town Crier, Inc.* v. *Commissioner of Rev.,* 385 Mass. 692, 695 (1982). Rather, the court continued, the exemptions "are merely part of the statutory definition of the types of sales and uses of tangible personal property which are to be employed in measuring the excises and of those which are not so to be used." *DiStefano* v. *Commissioner of Rev., supra* at 325. See also *Commissioner of Rev.* v. *Purity Supreme, Inc.,* 396 Mass. 287, 290 (1985).

Likewise, in *New England Trust Co.* v. *Commissioner of Corps. & Taxn.,* 315 Mass. 639 (1944), a trustee petitioned for a determination that certain transfers by a decedent had not been gifts in contemplation of death and therefore were not taxable as such. Characterizing the case as "an independent proceeding brought . . . by a trustee to ascertain whether the transfer to it in trust is taxable," *id.* at 641-642, as opposed to an appeal from a determination of value or a petition for abatement, the Supreme Judicial Court held that the burden of proof must be assigned to the commissioner. "Whatever may be true in other forms of proceeding, in this proceeding the burden of proof upon issues of fact does not depend upon the circumstance that one party rather than another happens to bring the petition. That burden falls where general principles of law would naturally

and logically cause it to fall. The burden of proving the taxability of the transfer is therefore upon the commissioner who seeks to establish the tax." *Id.* at 642.[7]

What distinguishes one category of cases from the other is not apparent. Contrast, for example, *Towle* v. *Commissioner of Rev.*, 397 Mass. at 603 (burden on taxpayer to prove boat not subject to use tax), with *DiStefano* v. *Commissioner of Rev.*, *supra* (burden on commissioner to prove transactions not exempt from sales tax). That the former arose as an abatement proceeding and the latter as a declaratory judgment action does not strike us as a meaningful difference.

However, with the above as background, we turn to the specific question of allocating the burden of proof where the validity of a tax assessment depends upon the taxpayer's domicile. The rules governing determinations of domicile are generally accepted. Domicile is "the place of actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode." *Commonwealth* v. *Davis*, 284 Mass. 41, 50 (1933). Thus, a person may have a residence in one place and a permanent home (i.e., a domicile) in another. *Hopkins* v. *Commissioner of Corps. & Taxn.*, 320 Mass. 168, 173 (1946). Everyone has a domicile, and that domicile is not lost until a new domicile is actually acquired. *Commonwealth* v. *Davis*, *supra* at 49. "A new domicil 'is acquired only by a clear and honest purpose to change, which is carried into actual execution.' " *Mellon Natl. Bank & Trust Co.* v. *Commissioner of Corps. & Taxn.*, 327 Mass. 631, 641 (1951), quoting from *Thayer* v. *Boston*, 124 Mass. 132, 147 (1878). "A change of domicil takes place when a person with capacity to change his domicil is physically present in a place and intends to make that place his

---

[7]Contrary to the commissioner's position, the allocation of burden of proof to the commissioner does not appear to have been a product of the court's treatment of the case as a petition by a fiduciary for instructions. See *id.* at 642. Logic hardly compels a conclusion that the act of petitioning for instructions by itself automatically casts the burden of proof upon the adverse party. Rather, the court's point was that the fact that the trustee commenced the action and sought relief did not of itself require that it shoulder the burden. The burden would be allocated "where general principles of law would naturally and logically cause it to fall." *Ibid.*

home for the time at least . . . ." *Hershkoff* v. *Registrars of Voters of Worcester,* 366 Mass. 570, 576-577 (1974). The Restatement (Second) of Conflict of Laws § 11 comment a (1969) defines a person's domicile as "usually the place where he has his home." "Home" is defined as "the place where a person dwells and which is the center of his domestic, social and civil life." *Id.* § 12. See *Reiersen* v. *Commissioner of Rev.,* 26 Mass. App. Ct. 124, 125 (1988). "It is a general rule that the burden of showing a change of domicil is upon the party asserting the change." *Mellon Natl. Bank & Trust Co.* v. *Commissioner of Corps. & Taxn., supra* at 638. See *Commonwealth* v. *Davis, supra* at 49 ("The burden of proof that his domicil was changed rested on the defendant because he is the one who asserted that such change had taken place").

The principle that one who asserts that a domicile has changed has the burden of proving that fact is applicable to tax cases. Thus, in *Mellon National Bank & Trust Co.* v. *Commissioner of Corps. & Taxn., supra,* where it was undisputed that the decedent was previously domiciled in Pennsylvania, the court held that "[h]ere the burden [of showing the change in domicile] is upon the commissioner who seeks to establish the tax." This was so notwithstanding that it was the decedent's executor that had petitioned the Probate Court for a binding declaration of domicile. See also *Hopkins* v. *Commissioner of Corps. & Taxn., supra,* wherein the commissioner attempted to impose an inheritance tax on the ground that the deceased had changed his domicile from New Hampshire to Massachusetts. The court stated, "[t]he determination of domicil is mainly a question of fact. . . . The burden of proof was upon the commissioner who seeks to establish the tax . . . ." *Id.* at 173. Should it be the taxpayer who asserts a change of domicile, then it is the taxpayer who must shoulder the burden on that issue. See *Commonwealth* v. *Davis, supra* at 48-49 (taxpayer alleged change of domicile from Massachusetts to Texas inspired by divine guidance).

We see no reason to depart from these principles in an abatement case where the validity of the tax imposition is based wholly upon the question whether the taxpayer's domicile has changed. The burden should continue to be on the party assert-

ing that the change has occurred. This approach is consistent with existing decisions on change of domicile in tax contexts. To the extent that it deviates from the concept that the taxpayer should prove his right to relief,[8] that proposition is already subject to a variety of departures. See the *DiStefano*, *Purity Supreme, Inc.* and *New England Trust Co.* cases referred to above. In the present situation, "general principles of law would naturally and logically cause [the burden] to fall" upon the party asserting the change. *New England Trust Co.* v. *Commissioner of Corps. & Taxn.*, 315 Mass. at 642.

The burden to which we refer is the burden of persuasion, not merely a burden of production. Those decisions casting the burden upon the party who asserts a change in domicile clearly contemplate that a burden of persuasion is being allocated. Furthermore, placing only a burden of production upon the commissioner would have little meaning in this context. "Domicil once acquired is not lost until a new one is obtained . . . and the original domicil is presumed to have continued in the absence of compelling evidence that it was changed." *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 162 (1978). Upon a showing by a taxpayer of an existing domicile, that taxpayer has made out a prima facie case that the domicile has continued; to say that the commissioner then has a burden to produce evidence is to state the obvious, since the commissioner will automatically lose if he remains silent. The burden upon the commissioner under such circumstances is not only to produce, but to persuade.

5. *Effect of error.* Having determined that the board improperly imposed the burden of persuasion upon Horvitz, we consider whether that error made a difference in the outcome of the appeal. "It is well established that the board's findings of fact and its decision must be supported by substantial evidence." *Irving Saunders Trust* v. *Assessors of Boston*, 26 Mass. App. Ct. 838, 841 (1989). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a

---

[8]In a case such as this, there is not in fact a substantial deviation. The taxpayer could not succeed in his petition for an abatement without, as an initial matter, making a prima facie showing of his past non-Massachusetts domicile — in essence, meeting his own burden of production.

conclusion." G. L. c. 30A, § 1(6). Whether the board's findings are supported by substantial evidence must be determined upon consideration of the entire record. *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966). An administrative finding must be set aside if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from Jaffe, Judicial Control of Administrative Action 598 (1965).

We are mindful of the deference normally paid to determinations of an administrative agency in which the Legislature has vested primary responsibility for the making of decisions of this nature. However, we cannot ignore the fact that the board itself obviously viewed the allocation of burden of proof as important to the outcome of the appeal. Thus, the board, in the opinion section accompanying its findings, directly addressed the burden of proof, assigning it erroneously to the taxpayer. It is highly unlikely that the board would have addressed the subject to the same degree if the resolution thereof did not figure in its decision.

Our concern is compounded by the difficulty of deriving this taxpayer's intent from the particular evidence and our conclusion, stated here, that reasonable fact finders could draw (i.e., there was substantial evidence supporting) either of opposite inferences from this record. Because of Horvitz's considerable financial resources, he was able to create two locations in each of which he carried on important parts of his life. Were the law to countenance it, he virtually created two domiciles. In deciding that on and after September 2, 1991, Horvitz was physically present in Massachusetts and that he intended to make Massachusetts his home for the time at least (see *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. at 577), the board may well have been influenced by its view that Horvitz had the burden of persuading it that such a change had *not* taken place. Had the burden been imposed, as it should have been, upon the commissioner, we cannot be sure what the board's ultimate factual conclusion would have been.

6. *Conclusion.* The decision of the Appellate Tax Board is

Horvitz *v.* Commissioner of Revenue.

vacated. The matter is remanded to the board for further consideration in accordance with this opinion. We leave to the board, acting in its discretion, the question whether further hearings are necessary.

*So ordered.*