COMMISSIONER OF REVENUE *vs.* FASHION AFFILIATES, INC.

Suffolk.  September 17, 1982. — October 29, 1982.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation,* Sales and use tax: exceptions; Appellate tax board: jurisdiction.
 *Jurisdiction,* Appellate tax board.

Rented machinery used by a clothing manufacturer to produce paper
 "markers" that are used and later consumed in the process of tracing
 pattern pieces in the manufacture of dresses was exempt from use tax
 by reason of the provisions of G. L. c. 64, § 6 (*s*).  [544-547]
This court vacated a decision of the Appellate Tax Board allowing an
 abatement of use tax and remanded the matter for consideration of
 whether the taxpayer had made timely filing of any use tax returns ad-
 mittedly due for the periods in question, as a prerequisite for the
 board's exercise of jurisdiction of the appeals.  [547-548]

APPEAL from a decision of the Appellate Tax Board.

*Judith S. Yogman,* Assistant Attorney General, for the
plaintiff.

*Lawrence M. Slater & Victoria L. Polito,* for the defend-
ant, submitted a brief.

*James C. Heigham,* for Massachusetts Newspaper Pub-
lishers Association, amicus curiae, submitted a brief.

WILKINS, J.  The Commissioner of Revenue has appealed
from a decision of the Appellate Tax Board (board) granting
Fashion Affiliates, Inc., an abatement of use taxes assessed
on its rental of certain machinery used in the manufacture
of clothing.  The board concluded, we think correctly, that
the machinery, known as the "Markamatic System" and
leased by Fashion Affiliates, was exempt from use taxes by
reason of the provisions of G. L. c. 64H, § 6 (*s*), as appear-
ing in St. 1971, c. 555, § 45.  See G. L. c. 64I, § 7 (*b*).

The board rejected the Commissioner's argument that,
because Fashion Affiliates did not file timely sales and use

tax returns (except for one three-month period), Fashion Affiliates' appeals for abatement were, in large measure, not properly before the board. Our recent opinion in *Commissioner of Revenue* v. *Pat's Super Mkt., Inc.*, ante 309 (1982), deals with the jurisdictional question. We remand the appeals to the board for consideration in light of that opinion. Because, as both parties agree, the substantive issue must be reached at least as to one three-month period, we discuss it first.

1. Whether the machinery is exempt from the use tax depends on the scope of the exemption set forth in G. L. c. 64H, § 6 (*s*). That section exempts sales (including the lease or rental of tangible personal property [G. L. c. 64H, § 1 (12) (*a*)]) of certain machinery used directly and exclusively in an industrial plant in the actual manufacture, conversion, or processing of tangible personal property to be sold. The relevant exemption language of G. L. c. 64H, § 6 (*s*), as appearing in St. 1971, c. 555, § 45, is set forth in the margin, with the changes wrought by the 1971 amendment presented in italics.[1] The 1971 amendment narrowed the scope of § 6 (*s*)'s exemption. Machinery is exempt if it is "used solely during a manufacturing, conversion or processing operation to effect a direct and immediate physical

---

[1] "(*s*) Sales of machinery, or replacement parts thereof, used directly *and exclusively* . . . in an industrial plant in the *actual* manufacture, conversion or processing of tangible personal property to be sold . . . . *For the purpose of this paragraph, . . . machinery shall be deemed to be used directly and exclusively in the actual manufacture, conversion or processing of tangible personal property to be sold only where such machinery is used solely during a manufacturing, conversion or processing operation* [1] *to effect a direct and immediate physical change upon the tangible personal property to be sold;* [2] *to guide or measure a direct and immediate physical change upon such property where such function is an integral and essential part of tuning, verifying or aligning the component parts of such property; or* [3] *to test or measure such property where such function is an integral part of the production flow or function.*"

The numbers in brackets are inserted to indicate the three definitions of circumstances in which machinery is to "be deemed to be used directly and exclusively in the actual manufacture, conversion or processing of tangible personal property to be sold."

change upon the tangible personal property to be sold" or "to guide or measure a direct and immediate physical change upon such property where such function is an integral and essential part of tuning, verifying or aligning the component parts of such property."

The Markamatic System is a series of machines, the heart of which is a minicomputer, that Fashion Affiliates uses to manufacture dresses. The process begins with a dress pattern of a single size. A pattern grader enters these dimensions into the system, which then automatically calculates the adjustments necessary to produce patterns of various dress sizes. The system displays the pieces comprising a single dress size as images on a cathode-ray screen. In this way, the operator can position them to achieve maximum use of the fabric, which usually comes in bolts one hundred yards long. The result of the process is a marker, a long sheet of paper on which many pattern pieces are traced. The marker is taken into the cutting room, spread onto a pile of fabric from the long bolts, and used to guide the cutting knife. In the process, the marker is destroyed. The pieces it defined are stitched together to make dresses.

The Commissioner argues that the Markamatic System is not exempt because it is not used directly and exclusively in the actual manufacture of dresses and because the system produces not dresses but markers that are consumed and used in the actual manufacture of dresses. The first of these arguments concerns the proper application of the exemption language of § 6 (s) quoted above. The second concerns the denial of any exemption pursuant to the penultimate sentence of § 6 (s), a point to which we shall return.

We acknowledge that the 1971 amendment of § 6 (s) imposed new restrictions on that exemption, thus limiting the broad construction given to § 6 (s), before its amendment, by our opinion in *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation,* 358 Mass. 563 (1971). See *Lowell Gas Co.* v. *Commissioner of Corps. & Taxation,* 377 Mass. 255, 260 n.9 (1979). Cf. *Houghton Mifflin Co.* v. *State Tax Comm'n,* 373 Mass. 772, 776 n.5 (1977) (discussing amend-

ments made by St. 1971, c. 555, § 45, to G. L. c. 64H, § 6
[*r*]). We must scrutinize closely the definition of what is
deemed to be machinery "used directly and exclusively . . .
in the actual manufacture, conversion or processing of tan-
gible personal property to be sold." The use of the Marka-
matic System falls within at least the second of the three
stated statutory definitions (see n.1 above) because it is
machinery "used solely during a manufacturing . . . opera-
tion . . . to guide or measure a direct and immediate physi-
cal change upon . . . [tangible personal] property where
such function is an integral and essential part of . . . verify-
ing or aligning the component parts of such property." The
machinery is used to guide and measure a direct and imme-
diate physical change in the material, a function that is an
integral and necessary role in producing properly cut por-
tions of the dresses being manufactured. We think it imma-
terial that the Markamatic System provides guidance and
measurement through the production of markers. The
physical change upon the material must be immediate and
direct, as it is. The definition does not require that the
machinery's guidance or measurement be direct or immedi-
ate in the sense of physical contact.[2]

We come then to the Commissioner's argument that the
next to last sentence of § 6 (*s*) denies any exemption to
Fashion Affiliates. The Commissioner argues that this sen-
tence, which is set forth in the margin,[3] denies an exemption

---

[2] We need not consider whether the Markamatic System also fits the
first definition in § 6 (*s*) (see n.1 above) in which the machinery must "ef-
fect a direct and immediate physical change upon the tangible personal
property to be sold."

[3] "Machinery used directly and exclusively in the actual manufacture,
conversion or processing of any tangible personal property which is not to
be sold and which would be exempt under paragraph (*r*) or this para-
graph if purchased from a vendor thereof or machinery used during any
manufacturing, converting or processing, conveying or packaging opera-
tion or function or for any other purpose, except as heretofore specified,
shall not be exempt under this paragraph even though such operation,
function or purpose is an integral or essential part of a continuous produc-
tion flow or manufacturing process."

for machinery used directly and exclusively in the actual manufacture of any tangible personal property which is not to be sold and which would be exempt under G. L. c. 64H, § 6 (r), if purchased from a vendor. The argument continues that the Markamatic System produces markers that are not to be sold and that, because the markers are "consumed and used directly and exclusively . . . in the actual manufacture of tangible personal property to be sold," (i.e., the dresses), their sale by a vendor would be exempt from tax under § 6 (r). For the purpose of our decision, we accept this argument as applied to the markers.

This penultimate sentence in § 6 (s) appears to be an admonition not to read the exemptions of § 6 (s) as expansively as this court read them in *Courier Citizen Co. v. Commissioner of Corps. & Taxation*, 358 Mass. 563 (1971), prior to the 1971 amendment. The phrase in § 6 (s) "except as heretofore specified" preserves the exemptions specified earlier in § 6 (s), assuming (as we do from its place in the quoted sentence) that the phrase applies to both classes of machinery referred to in the first part of the sentence. Thus, because the Markamatic System qualifies, on a careful, nonexpansive reading, within the provisions of an exemption stated earlier in § 6 (s), the penultimate sentence does not vitiate that exemption.

2. Except for the third quarter of 1976, Fashion Affiliates filed no sales and use tax returns for the periods in question "at or before the time of bringing [its] application[s] for abatement." G. L. c. 62C, § 38. The Commissioner argues that in each period for which returns should have been filed some sales or use taxes were payable apart from the tax asserted as to the machine rental. The record appears to support this contention, at least as to certain periods.

As to periods for which a sales or use tax was admittedly payable and as to which no sales and use tax return was filed before the filing of an application for abatement, the board lacked jurisdiction to pass on Fashion Affiliates' appeals. *Commissioner of Revenue v. Pat's Super Mkt., supra* at

310-311. Except as to the third quarter of 1976, for which a return was seasonably filed, the board's decision must be vacated and the appeals remanded to the board. On remand, the board should consider whether for any period no tax was due at all. As to any such period, the board should abate the tax, plus interest and penalties, because, as to any period for which no tax was due at all, a return need not be filed as a condition precedent to receiving an abatement. *Commissioner of Revenue* v. *Pat's Super Mkt., supra* at 310.

3. The decision of the board is affirmed as to use taxes assessed for the third quarter of 1976 (for which a sales and use tax return was filed). The decision is otherwise vacated, and the appeals are remanded to the board for further consideration in light of this opinion.

*So ordered.*