COMMISSIONER OF REVENUE *vs.* PURITY SUPREME, INC.

Suffolk.  November 6, 1985. - December 5, 1985.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation,* Sales and use tax: exemption.

Purchases by the operator of a supermarket from an advertising agency of
   "compositions" which were then sent to newspapers and used for produc-
   ing advertisements appearing either as printed pages of the newspapers
   or as advertising supplements inserted into and distributed with the
   newspapers were transactions exempt from sales tax by reason of the
   provisions of G. L. c. 64H, § 6 (*m*) and (*r*). [290-291]

APPEAL from a decision of the Appellate Tax Board.

*Douglas H. Wilkins,* Assistant Attorney General, for the
Commissioner of Revenue.

*Barbara A. Lenk (James W. Stoll* with her) for the taxpayer.

NOLAN, J. The sole issue in this case is whether the Appellate
Tax Board (board) erred in reversing the denials by the Com-
missioner of Revenue (Commissioner) of the applications for
abatement of Purity Supreme, Inc. (Purity), in an amount rep-
resenting that portion of assessed taxes attributable to the pur-
chase of "compositions" from an advertising agency and used
by newspapers for Purity's advertisements. We hold that the
board committed no error and that Purity was entitled to an
abatement.

Crucial to the issue is an understanding of the nature of a
"composition" as that term is used in the production of adver-
tising. From the findings of the board we learn that Purity's
advertisements appear either as printed pages in the newspaper
or as inserts distributed with the newspapers. In creating its
advertising, Purity first decides which goods are to be promoted
and generally the "type of theme" that will dominate the art
work. Purity's advertising department then uses that informa-

tion to design and draw the advertising, using tissue paper, on which a sketch is eventually made. The art work consists of drawing letters, symbols, and pictures illustrating the products to be offered for sale, together with their prices. Upon completion of the art work and its incorporation into the sketch, the sketch is sent to Demoulin Associates (Demoulin), a company engaged by Purity to prepare a "composition." The composition is also known as a "mechanical board." Upon receipt of the sketch of the art work from Purity's advertising department, Demoulin makes several copies of it. A Demoulin employee copies the art work on a reproduction machine which can also enlarge or decrease the size of an original. The lettering on the sketch is recreated by a typesetting process. Simultaneously, the images are recorded and then processed. The prices of the products are processed by another machine. The numbers, letters, and art work are then converted to a black and white image on paper, and then sent to the "pay-stub girl." She cuts up the letters, numbers, and art work and pastes them on the composition board in the same positions as on the original sketch. The composition is then shaded to produce lighter or darker areas for emphasis. That completes the work involved in making up the composition.

Copies are made of the completed composition board and returned to Purity's advertising department for proofreading. Any errors are called to Demoulin's attention and are corrected. Upon final approval by Purity, the composition is sent to the newspaper where it is photographed in a modern typesetting process in order to transfer the composition to a page of the newspaper.

The sketch which is prepared by Purity's art department is not taxed. The composition is generally used only once. After the composition is used by the newspaper, it is returned to Purity and discarded. The useful life of the composition is less than one year and the cost of the composition paid by Purity to Demoulin is allowed as an ordinary and necessary business expense for Federal income tax purposes. Purity's only purpose in sending the sketch to Demoulin is to convert the sketch into a composition which in turn is used by a newspaper for conver-

sion to a newspaper advertisement or is used by a printer chosen by Purity to print advertising circulars for distribution. Otherwise, Purity has no interest in obtaining the compositions. Purity is not in the business of publishing a newspaper. It is basically and primarily an operator of supermarkets. No sales or use taxes were paid by Purity on its acquisition of the compositions.

On July 18, 1978, the Commissioner notified Purity of her intention to assess a deficiency in sales and use taxes with interest for the tax period from October 1, 1974, to September 30, 1977. On October 4, 1978, Purity paid the full amount of the additional assessments with interest to the date of payment.

Purity filed applications for abatement in the amount of $11,694.02, which represented that portion of the additional taxes assessed which were attributable to so much of its purchases of compositions from Demoulin sent by Purity to the newspapers and used either for processing as printed pages of the newspaper or as advertising supplements inserted into and distributed with the newspapers. No claim for abatement is made by Purity, however, for any other items, including its purchase of compositions which were sent to printers for processing into advertising circulars to be distributed by Purity.

On July 5, 1979, the Commissioner denied Purity's applications for abatement, and on August 16, 1979, Purity entered a timely appeal with the board.

The parties stipulated, and the board found, that the amount of the additional sales and use taxes assessed to Purity and attributable to its purchases of compositions was $11,272.66 for the tax periods in question.

Purity argues that its purchases of compositions which are used in the preparation of its newspaper advertisements and advertising supplements are exempt transactions under G. L. c. 64H, § 6 (*r*) (1984 ed.) (sales tax), and under G. L. c. 64I, § 7 (*b*) (1984 ed.) (use tax). We need not focus on the use tax beyond noting that the use tax does not apply to sales exempt from the sales tax. G. L. c. 64I, § 7 (*b*). The question is whether the compositions are exempt under the sales tax. We hold that they are exempt, although it is a close case.

The provisions of G. L. c. 64H, § 6 (*r*), in effect during the tax periods under review exempt from the sales tax "materials . . . which are consumed and used directly and exclusively . . . in the actual manufacture of tangible personal property to be sold, including the publishing of a newspaper." We note, at the outset, that in construing § 6 (*r*), we are not to impose on the taxpayer any special burden because it seeks an exemption. No such special burden rests on a taxpayer who seeks to invoke the exemption provisions of G. L. c. 64H, § 6 (*m*), (*r*). *DiStefano* v. *Commissioner of Revenue*, 394 Mass. 315, 325 (1985).

The term "used directly and exclusively . . . in the actual manufacture" came under review in *Commissioner of Revenue* v. *Fashion Affiliates, Inc.*, 387 Mass. 543 (1983), in an analogous provision, G. L. c. 64H, § 6 (*s*). At issue in *Fashion Affiliates* was an exemption for machinery used in the manufacture of markers which were utilized in the production of dresses and called, in general, the Markamatic System. The court described the system as follows: "The Markamatic System is a series of machines, the heart of which is a minicomputer, that Fashion Affiliates uses to manufacture dresses. The process begins with a dress pattern of a single size. A pattern grader enters these dimensions into the system, which then automatically calculates the adjustments necessary to produce patterns of various dress sizes. The system displays the pieces comprising a single dress size as images on a cathode-ray screen. In this way, the operator can position them to achieve maximum use of the fabric, which usually comes in bolts one hundred yards long. The result of the process is a marker, a long sheet of paper on which many pattern pieces are traced. The marker is taken into the cutting room, spread onto a pile of fabric from the long bolts, and used to guide the cutting knife. In the process, the marker is destroyed. The pieces it defined are stitched together to make dresses." *Id.* at 545.

The Commissioner argued in *Fashion Affiliates* that the Markamatic System was not exempt because it was not used directly and exclusively "in the actual manufacture of dresses." In a word, the Commissioner argued that the system produced mark-

ers not dresses and hence the system was not machinery which was "used directly and exclusively in the actual manufacture of tangible personal property to be sold." The Commissioner argued that dresses, not markers, were to be sold. The court disagreed and ruled that the machinery used in making markers was an integral part of the manufacturing process of dresses which were sold. The court said: "The machinery is used to guide and measure a direct and immediate physical change in the material, a function that is an integral and necessary role in producing properly cut portions of the dresses being manufactured. We think it immaterial that the Markamatic System provides guidance and measurement through the production of markers. The physical change upon the material must be immediate and direct, as it is." *Commissioner of Revenue* v. *Fashion Affiliates, Inc., supra* at 546. The same can be said for compositions in the present case. They formed an integral part of the process of manufacturing the newspaper advertisements. Compositions are as much a part of the "actual manufacture" of newspapers as the "Markamatic System" is in the actual manufacture of dresses.

The words "consumed" and "used" are clarified in § 6 (*r*) as referring to material whose useful life is less than one year or whose cost is allowable as an ordinary and necessary business expense for Federal income tax purposes. The board found that both these conditions were met and, hence, Purity had brought itself within § 6 (*r*). See *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation*, 358 Mass. 563, 573 (1971).

The board also ruled that Purity's compositions came within the protection of G. L. c. 64H, § 6 (*m*) (1984 ed.), which exempts from sales tax "[s]ales of newspapers." This ruling is entirely consistent with our holding in *Sears, Roebuck & Co.* v. *State Tax Comm'n*, 370 Mass. 127, 130 (1976), where we ruled that Sears's advertising supplements, although not printed directly by the newspapers were "newspapers" for the purpose of the exemption under § 6 (*m*). The fact that Purity is not a newspaper is no more material than was the fact that Sears was not a newspaper in the *Sears* case. *Id.* See *Houghton Mifflin Co.* v. *State Tax Comm'n*, 373 Mass. 772 (1977).

*Decision of the Appellate*
*Tax Board affirmed.*