COMMISSIONER OF REVENUE *vs.* V. H. BLACKINTON & CO.,
INC.

Suffolk. February 9, 1995. - May 8, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Taxation*, Sales and use tax, Exemption. *Statute*, Construction.

A decision of the Appellate Tax Board that certain pollution control equip-
ment that was an integrated part of a manufacturing process and that
was required by Federal, State, and local environmental laws and regu-
lations was exempt from sales tax under G. L. c. 64H, § 6 (*s*), was
reversed where the board made no finding that the equipment "ef-
fect[ed] a direct and immediate physical change upon the tangible per-
sonal property" produced and sold, within the meaning of the statute.
[259-262]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Phyllis N. Crockett*, Assistant Attorney General, for the
Commissioner of Revenue.

*Ronald C. Kaczynski* for the taxpayer.

*Stephen S. Ostrach, Patrick W. Hanifin & Norman Wil-
liams, Jr.*, for Associated Industries of Massachusetts & an-
other, amici curiae, submitted a brief.

LYNCH, J. At issue in this case is whether certain pollution
control equipment used by V. H. Blackinton & Co., Inc.
(taxpayer), in its manufacturing processes is exempt from
the Massachusetts sales tax, pursuant to G. L. c. 64H, § 6
(*s*) (1992 ed.). In 1984, the Commissioner of Revenue (com-
missioner) assessed a sales tax on the taxpayer's purchase of
the equipment. The taxpayer paid the assessments and filed
applications for abatement. The applications were not acted
on within six months and, therefore, by operation of G. L.

c. 58A, § 6 (1992 ed.), were constructively denied. After a hearing, the Appellate Tax Board (board) ruled that the equipment was exempt from taxation and ordered that an abatement be granted. The commissioner appealed, and we transferred the case here on our own motion. We now reverse the board's decision.

The board found the following facts. The taxpayer is a Massachusetts corporation with its principal place of business in North Attleborough. It manufactures badges and insignia primarily for police and fire departments and private security organizations. It also produces medals, trophies, novelties, and commemorative coins. The manufacturing process necessary to produce these products involves the use of acids, heavy metals, and other toxic substances. This process produces various types of toxic fumes, dust, and contaminants.

Between April, 1980, and March, 1984, the taxpayer purchased several pieces of equipment for installation at its new plant. This equipment included exhaust, ventilation, and air treatment systems and a waste water treatment system. The exhaust, ventilation, and air treatment systems consisted of fans, hoods, vents, and ducts, which are connected to the plant's work stations and are designed to capture, to treat, and to dispose of the hazardous fumes and contaminants produced during various phases of the manufacturing process. The equipment was installed in order to protect the employees and the environment, as well as to comply with the requirements of Federal and State agencies and the requirements of the taxpayer's insurers. The ventilation, particulate collection, and fume treatment systems are necessary to production. The hoods are, in most cases, located within one foot of the work area where manufacturing activities take place and appear to be physically attached to the manufacturing equipment. The exhaust, ventilation, and dust collection systems are fully integrated with the admittedly exempt manufacturing equipment.

The waste water treatment system transports, treats, and disposes of the effluent from the manufacturing operations. The system consists of a network of pipes which carry waste

water and contaminated spills from the work area to various treatment tanks, where the contaminants are removed. The waste water treatment facility is required by and subject to inspection and regulation by Federal, State, and local agencies. This equipment is a necessary part of the taxpayer's manufacturing process, without which the manufacturing activities at the plant could not continue. The taxpayer could not continue with its manufacturing process if it did not comply with the regulations requiring a waste treatment system. The system is connected by piping to the electroplating tanks and other manufacturing equipment and is an integrated part of the manufacturing process.

Whether the machinery at issue is exempt from the tax depends on the scope of the exemption set forth in G. L. c. 64H, § 6 (*s*).[1] Prior to 1971, this court focused on three questions in determining whether the exemption applied: "(1) Is the disputed item necessary to production? (2) How close, physically and causally, is the disputed item to the finished product? (3) Does the disputed item operate harmoniously with the admittedly exempt machinery to make an integrated and synchronized system?" *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation*, 358 Mass. 563, 571 (1971), quoting *Niagara Mohawk Power Corp.* v. *Wanamaker*, 286 A.D. 446, 449 (N.Y. 1955), aff'd, 2 N.Y. 2d 764 (1956). However, in 1971 the statute was amended,

---

[1] General Laws c. 64H, § 6 (*s*) (1992 ed.), states: "The following sales and gross receipts therefrom shall be exempt from the tax imposed by this chapter: (*s*) Sales of machinery, or replacement parts thereof, used directly and exclusively . . . in an industrial plant in the actual manufacture of tangible personal property to be sold . . . . For the purpose of this paragraph . . . machinery shall be deemed to be used directly and exclusively in the actual manufacture, conversion or processing of tangible personal property to be sold only where such machinery is used solely during a manufacturing, conversion or processing operation to effect a direct and immediate physical change upon the tangible personal property to be sold; to guide or measure a direct and immediate physical change upon such property where such function is an integral and essential part of tuning, verifying or aligning the component parts of such property; or to test or measure such property where such function is an integral part of the production flow or function . . . ."

and the amendment narrowed the scope of the § 6 (*s*) exemption. St. 1971, c. 555, § 45. *Commissioner of Revenue* v. *Fashion Affiliates, Inc.*, 387 Mass. 543, 544 (1982). Under the amended statute, machinery is exempt if it is "used solely during a manufacturing, conversion or processing operation to effect a direct and immediate physical change upon the tangible personal property to be sold" or "to guide or measure a direct and immediate physical change upon such property where such function is an integral and essential part of tuning, verifying or aligning the component parts of such property." G. L. c. 64H, § 6 (*s*).

The board ruled that, in light of the proximity of the equipment to the product being manufactured, its necessity to the manufacturing process, and its integration with the manufacturing machinery, the equipment fits within the statutory exemption of G. L. c. 64H, § 6 (*s*). The board's analysis focuses only on whether the equipment is necessary and essential to the manufacturing process. The board failed to consider the added language of the statute, which requires the machinery to be "used solely during a manufacturing, conversion or processing operation to effect a direct and immediate physical change upon the tangible personal property to be sold." Although the taxpayer's pollution control equipment may be required by Federal, State, and local environmental laws and regulations and in that respect, may be viewed as legally necessary to the manufacturing process, the board must make a determination whether the equipment effects any physical change on the property to be sold.

For the foregoing reasons the decision of the board is reversed.

*So ordered.*